Argued and submitted May 23, resubmitted in banc September 4,
affirmed September 8, reconsideration denied November 4,
petition for review allowed December 16, 1980

In the Matter of Swartzfager, Debbie,
A Child.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,
*Appellant,*

*v.*

## JONES,
*Respondent.*

(No. 59,275, CA 16087)

616 P2d 572

Karen H. Green, Assistant Attorney General,
Salem, argued the cause for appellant. With her on the

brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Lee M. Hess, Portland, argued the cause for respondent. With him on the brief was Swire & Riebe, Portland.

WARDEN, J.

## WARDEN, J.

The state appeals from the order of the trial court denying the state's petition to terminate the parental rights of the respondent mother to her daughter, Debbie. We affirm.

On April 7, 1978, a petition to terminate mother's parental rights was filed in the Multnomah County Circuit Court, Juvenile Department. A hearing on that petition was held on July 11 and September 12, 1978. Mother did not appear, and the trial court entered an order terminating her parental rights. She appealed that order and on May 21, 1979, we reversed the judgment and remanded the case because the trial court had abused its discretion in denying mother's motion for a continuance and in conducting the termination hearing without her presence. *State ex rel Juv. Dept. v. Jones,* 40 Or App 401, 595 P2d 508 (1979). We did not reach the merits of the trial court's decision in that opinion.

On August 29, 1979, the state filed an amended petition to terminate mother's parental rights, pertinent portions of which we cite:

"2.   The child is within the jurisdiction of the Court by reason of the following facts:

"A.   On April 13, 1977, Debbie was made a ward of this court based upon findings that her conditions and circumstances were such as to endanger her welfare.

"B.   Debbie's mother, Beverly Jones, has failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of Debbie for more than one year prior to the date of this petition, to wit:

"Since March 30, 1977, when Debbie entered foster care in Multnomah County, the mother has neither visited nor communicated with either Debbie or her foster parents, nor has the mother provided any support.

"C.   On March 2, 1977, the mother abandoned Debbie, leaving her with Cathy Valle.

"D. As of the 8th day of June, 1979, the whereabouts of the mother, Beverly Jones, has been unknown by the Children's Services Department, the Juvenile Court, the mother's two previous attorneys, since the 29th of September 1978 when she last communicated with the Juvenile Court.

"E. The mother is unfit by reason of conduct or condition seriously detrimental to Debbie and reintegration of Debbie into the home of the mother is improbable in the foreseeable future due to conduct or condition not likely to change, to wit:

"1. The mother suffers from mental or emotional illness of such duration as to render it impossible for her to care for Debbie for extended periods of time.

"2. There has been a lack of effort on the part of the mother to adjust her circumstances to make return of the child possible.

"(3) The parent-child relationship has been alienated as a result of the conduct and condition of the mother.

"Wherefore, the State seeks termination of the parental rights of Beverly Jones."

A hearing on the amended petition was held on October 5 and October 11, 1979, and on October 18, the trial court entered an order denying the state's petition. We cite pertinent portions of that order:

"The Court finds that Beverly Jones was not a credible witness.

"The Court finds that Allegation A was admitted; Allegation B was not proved; Allegation C was not proved, and Allegation D was dismissed on motion of Lee Hess, attorney for mother, for State's failure to offer any proof.

"The Court finds that Beverly Jones did not intend to abandon Debbie Swartzfager in March of 1977.

"The Court further finds that Beverly Jones' conduct in March of 1977 did cause the alienation of the parent-child relationship.

"The Court further finds that the State has failed to prove that reintegration of the child with the mother is improbable in the foreseeable future.

"The Court finds that Allegation E has not been proved by a preponderance of the evidence.

"The Court further finds that a termination of parental rights would not be in the best interest of Debbie Swartzfager.

"The Court being fully advised in the premises:

"NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED: that

"1. The petition for termination of parental rights is hereby denied.

"* * * * *."

It is from this order that the state appeals.

The statute under which these proceedings are brought, ORS 419.523(3), provides:

"The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents have failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for one year prior to the filing of a petition. In determining such failure or neglect, the court shall consider but is not limited to one or more of the following:

"(a)  Failure to provide care or pay a reasonable portion of substitute physical care and maintenance if custody is lodged with others.

"(b)  Failure to maintain regular visitation or other contact with the child which was designed and implemented in a plan to reunite the child with the parent.

"(c)  Failure to contact or communicate with the child or with the custodian of the child. In making this determination, the court may disregard incidental visitations, communications or contributions."

Although this case is before us on the 1979 amended petition, it is the same case that was filed in 1978; it is not a new case that began with the filing of the amended petition on remand. The statutory year of failure or neglect "to provide for the basic physical and psychological needs of the child" which the state must prove is the year immediately prior to April 7, 1978,

the date of filing of the original petition herein, rather than the year immediately prior to August 29, 1979, the date of filing of the amended petition. The allegations of the amended petition are broad enough and the evidence introduced in the hearing is extensive enough to encompass the year April 7, 1977 to April 7, 1978. There is little doubt that mother failed during that year to provide for the needs of her daughter. The issue is whether she had reasonable and lawful cause for that failure. The trial court said regarding that issue:

"April of 1977 to April of 1978, I'll make a finding that the State has not convinced me by a preponderance of the evidence that the mother failed without reasonable and lawful cause to reunite herself with her child.

We agree with the trial court that mother did have such reasonable and lawful cause for her failure to provide for her daughter's needs.

Mother suffers from systemic lupus erythematosus. Hospital records of Serra Memorial Hospital, Sun Valley, California, show that she was first diagnosed to be suffering from lupus during her stay in that hospital from May 2, 1977 to May 5, 1977. As a part of the history she gave on admission, she indicated that she had had some arthralgias and some personality changes two or three months earlier. Her illness caused her to be hospitalized several times, as follows: Serra Memorial Hospital, Sun Valley, California, October 19, 1977 to October 29, 1977 and December 13, 1977 to December 18, 1977; Doctors' Hospital of San Leandro, California, December 19, 1977 to December 21, 1977; University of California Hospital at San Francisco, December 21, 1977 to January 3, 1978 and February 17, 1978 to February 21, 1978; and Doctors' Hospital of San Leandro, California, again, April 5, 1978 to May 10, 1978.

Dr. Charles Peterson, mother's treating physician from December, 1977 through 1978, described her as being "too sick to be worrying about other things

other than herself and her own problems." Dr. Peterson had her seen by a psychiatrist because of psychiatric problems associated with the lupus erythematosus.

Dr. Edward Rosenbaum, Professor at the University of Oregon Medical School and Chief of the Rheumatology Clinic there, testified that, in his opinion, mother's lupus ailment involved her central nervous system. He based his opinion on the facts that one-third of all lupus patients initially have psychiatric symptoms, the patient had a lumbar puncture which showed that her spinal fluid was not normal, i.e., proteins were elevated, and that she had an abnormal electroencephlogram. Dr. Rosenbaum was further of the opinion that if she had a personality change prior to her first hospitalization, that the change was probably due to organic brain damage. He testified, "* * *[T]his woman had serious organic disease that involved her brain." In response to a hypothetical question Dr. Rosenbaum gave his opinion that it was very probable that the ailment lupus erythematosus and unusual behavior, such as abandonment or neglect of a daughter, were related.

From all this we conclude that mother's failure or neglect to provide for her daughter's basic physical and psychological needs for the year prior to filing of the petition in this case had a reasonable and lawful cause. *See State ex rel Juv. Dept. v. Newman,* 33 Or App 357, 576 P2d 810 (1978).

Affirmed.

**JOSEPH, J.,** dissenting.

Cases such as this one are in principle disturbing to me, and many of them are heartrending on the facts. Still, the role of this court is to adjudicate applications of the public policy of this state as declared in ORS 419.523(3):

"The rights of the parent or parents may be terminated \*\*\* if the court finds that the parent or parents have failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for one year prior to the filing of a petition. \*\*\*"

The facts are that Debbie's mother moved to California on March 2, 1977, wilfully and knowingly leaving her behind without making adequate arrangements for her long-term care or for her later to rejoin the family. During the following two months mother made no efforts to contact or provide for the child. On May 2, mother was hospitalized for four days. More than five months later mother began a series of hospitalizations which totalled 75 days by May 10, 1978.

Without doubt mother was seriously ill from May 2 on, and perhaps even from an earlier date. But there is no evidence that her original departure from Debbie (which the trial judge characterized correctly as an abandonment) was due to that illness or that at all times during the year after March 2, 1977, she was incapable of doing anything at all for her daughter. That she may have put her concerns about her condition first (and only) is not, for me, a "reasonable and lawful *cause.*"

The mother will never recover her health. She will never be able to treat Debbie as a child even minimally ought to be treated. She will always have the same *excuse,* and Debbie will never have a chance. That really disturbs me. What is even more bothersome is the majority's unspoken interpretation of the statute: A failure or neglect to provide for a child once initiated can never be subjected to the statutory policy if during any substantial period of time afterwards the parent or parents have an excuse for continuing to act as they initially acted—even if there is no evidence that the parent or parents would have acted differently in the absence of the excuse.

I dissent.

Schwab, C. J., and Buttler and Warren, JJ., join in this dissent.